IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD

RANDY MICHAEL BRODNIK, D.O.,

    Plaintiff,

v.                                  Civil Action No. 1:11-0178

ROBERT LANHAM, et al.,

    Defendants.

### MEMORANDUM OPINION AND ORDER

### I.  Background

According to the Second Amended Complaint, at the time of the events giving rise to the instant Complaint, defendant Robert Lanham was employed as a special agent with the Internal Revenue Service.  Complaint ¶¶ 8 and 10.  As a result of a six-year investigation of plaintiff Randy Michael Brodnik, D.O. ("Brodnik") for income tax evasion, Lanham recommended that Brodnik be prosecuted.  See id. at ¶ 10.  On March 18, 2009, a federal grand jury returned a seven-count indictment against Brodnik charging him with conspiracy and six counts of income tax evasion.  See id. at ¶ 11.  On June 2, 2010, the grand jury returned a seven-count second superseding indictment charging Brodnik with one count of conspiracy, five counts of income tax evasion, and one count of corruptly endeavoring to impede and obstruct the due administration of the Internal Revenue laws. See id. at ¶ 13.  After a three-week jury trial, Brodnik was acquitted of all charges.  See id. at ¶¶ 14, 20.

According to the Complaint, at Brodnik's trial, Lanham testified that it was "debatable" that Brodnik had broken the law.  See id. at ¶ 16.  Brodnik further alleges that one of the government's witnesses, defendant Deborah Beck, testified at trial that she illegally accessed Brodnik's electronic mail and provided it to defendant Lanham.  See id. at 17-18.  Count I of the Complaint is brought pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and alleges the violation of Brodnik's constitutional rights. Count II of the Complaint alleges that defendant Brodnik made numerous wrongful disclosures of plaintiff's tax return information during the investigation, in violation of Internal Revenue Code § 7431.  Counts III through VII are state law claims for civil conspiracy, invasion of privacy, outrage, intentional infliction of emotional distress, and malicious prosecution against defendants Lanham and Beck.

As to the state law claims against Brodnik, the court granted the motion of the United States to dismiss defendant Lanham and substitute the United States as a defendant.  (ECF No. 56).  Thereafter, by Order entered on August 6, 2015, the court dismissed without prejudice plaintiff's FTCA claims against the United States for failure to exhaust administrative remedies. (ECF No. 77).

Both Lanham and Beck have filed motions to dismiss.

2

## II.  Analysis

A.      Lanham's Motions to Dismiss

       1.       FTCA Judgment Bar

       Defendant Robert Lanham has moved to dismiss the <u>Bivens</u> claim brought against him on the ground that it is barred by the Federal Tort Claims Act ("the Act" or "FTCA") judgment bar, 28 U.S.C. § 2676.  (ECF No. 78).  By Order entered on August 6, 2015, the court dismissed with prejudice plaintiff's FTCA claims against the United States for failure to exhaust administrative remedies.  (ECF No. 77).  Plaintiff contends that the judgment bar rule does not operate as a bar to bringing his Bivens claim because the order dismissing his FTCA claims was not, according to him, a final judgment.  Lanham, relying on a number of cases, including several from the Southern District of West Virginia, argues that 28 U.S.C. § 2676 is not limited to final judgments. According to Lanham, "judgment" means any judgment, final or not.

       Shortly after Lanham filed his motion to dismiss, on November 6, 2015, the United States Supreme Court granted certiorari in <u>Simmons v. Himmelreich</u>, to answer the question whether a final judgment dismissing an FTCA case on the ground that relief is precluded by one of the FTCA's exceptions to liability, 28 U.S.C. § 2680, bars a subsequent action by the claimant against the federal employees whose acts gave rise to the FTCA claim.  <u>Simmons v. Himmelreich</u>, 766 F.3d 576, <u>cert.</u>

3

granted, 136 S. Ct. 445 (2015).  Given Lanham's position that any

judgment is barred by the FTCA judgment bar, Himmelreich had the

potential to affect the court's decision with respect to the

instant motion.  On June 6, 2016, the Supreme Court issued its

opinion in Himmelreich, concluding that the FTCA's judgment bar

rule does not bar a Bivens suit against Bureau of Prisons

employees where Himmelreich's earlier FTCA suit had been

dismissed based upon the discretionary function exception.

Simmons v. Himmelreich, 136 S. Ct. 1843, 1847-48 (2016).

One court explained the significance of the FTCA judgment

bar and the choices a plaintiff who seeks relief under the FTCA

and Bivens must make.

> A prospective plaintiff seeking redress against
> a federal official for injury has two distinct
> avenues of relief.  He may file a common law tort
> claim against the United States under the FTCA
> and- or in the alternative – he may file a
> constitutional tort claim against the individual
> officer under Bivens.
>
> In deciding whether to pursue a claim under the
> FTCA or under Bivens, or both, a plaintiff must
> consider the distinct advantages and drawbacks fo
> the two causes of action.  First, the defendant in
> an FTCA action is the United States, whereas in a
> Bivens suit the defendant is the individual
> official.  28 U.S.C. §§ 1346(b) & 2674.  The
> obvious advantage to pursuing an FTCA claim is
> that payment of a successful claim is assured
> through the deep pockets of the United States
> treasury; whereas a successful judgment against an
> individual defendant may not be satisfied if the
> defendant lacks sufficient assets.  S. Rep. No.
> 588, at 2-3 (1973), reprinted in 1974 U.S.C.C.A.N.
> 2789.  Second, while a jury trial is available in
> a Bivens suit, only a bench trial is permitted

4

> under the FTCA.  28 U.S.C. § 2402.  Third,
> punitive damages are available in a <u>Bivens</u> action
> but are not available under the FTCA.  <u>Id.</u> § 2674.
> Finally, a judgment under the FTCA constitutes "a
> complete bar to any action by the claimant, by
> reason of the same subject matter, against the
> employee of the government whose act or omission
> gave rise to the claim."  28 U.S.C. § 2676.  Thus,
> if a plaintiff elects to pursue a remedy under the
> FTCA to judgment, he risks dismissal of any <u>Bivens</u>
> claim if the <u>Bivens</u> claim arises from "the same
> subject matter" and is against the same "employee
> whose act or omission gave rise to the claim."
> <u>Id.</u>  This is true whether the FTCA claim is
> brought before or after the <u>Bivens</u> claim, or if,
> as here, both claims are brought in the same suit.
> This is also true irrespective of whether the FTCA
> judgment is favorable to the plaintiff or the
> United States.

<u>Sanchez v McLain</u>, 867 F. Supp.2d 813, 816-17 (S.D.W. Va. 2011)

(Johnston, J.); <u>see also</u> <u>Unus v. Kane</u>, 565 F.3d 103, 122 (4th

Cir. 2009) ("Litigants frequently face tough choices – choices

that rarely come without consequence.  In these proceedings, the

plaintiffs chose to pursue their claims against the federal agent

defendants through <u>Bivens</u> as well as under the FTCA.  As such,

they risked having a judgment on the FTCA claims operate to bar

their <u>Bivens</u> theories.").

        The Federal Tort Claims Act "allows plaintiffs to seek

damages from the United States for certain torts committed by

federal employees."  <u>Himmelreich</u> at 1845.  The Act provides in

pertinent part:

> [T]he district courts . . . shall have
> exclusive jurisdiction of civil actions on
> claims against the United States, for money
> damages . . . for injury or loss of property,

> or personal injury or death caused by the
> negligent or wrongful act or omission of any
> employee of the Government while acting
> within the scope of his office or employment,
> under circumstances where the United States,
> if a private person, would be liable to the
> claimant in accordance with the law of the
> place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

"In most cases, an FTCA action is the exclusive civil remedy available against government employees acting within the scope of their employment." Donahue v. Connolly, 890 F. Supp.2d 173, (D. Mass. 2012) (citing 28 U.S.C. § 2679(b)(1)). There is, however, an exception to the Act for claims alleging Constitutional violations. See id. Therefore, a plaintiff is permitted "to bring both an FTCA claim and Bivens claim against the individual defendants, and courts often bifurcate the proceedings to address the FTCA claim first." Id.

At issue in this case is § 2676 of the FTCA, the Judgment Bar which states:

> The judgment in an [FTCA] action . . . shall
> constitute a complete bar to any action by the
> claimant, by reason of the same subject matter,
> against the employee of the government whose act
> or omission gave rise to the claim.

The Act does not define "judgment". See Donahue, 890 F. Supp.2d at 179 ("Unfortunately, the Act does not define the key term `judgment,' in Section 2676."). Donahue suggested the following definition for "judgment" from the Fourth Edition of Black's Law Dictionary might be an appropriate one: "The official and

6

authentic decision of a court of justice upon the respective
rights and claims of the parties to an action or suit therein
litigated and submitted to its determination." Id. at 179-80
(quoting Black's Law Dictionary 977 (4th ed. 1951)). Donahue
goes on to discuss the legislative history of the FTCA and
concluded that "the judgment bar's legislative history undercuts
[defendant]'s argument that the judgment bar ought to be applied
to all judgments, no matter their import or quality." Id. at
182-83.

While the FTCA does not define the term "judgment," the
Federal Rules of Civil Procedure do.  Federal Rule of Civil
Procedure 54(a) provides: "`Judgment' as used in these rules
includes a decree and any order from which an appeal lies."  As a
general matter, "[a]n order dismissing a complaint without
prejudice is not an appealable final order under § 1291 if `the
plaintiff could save his action by merely amending his
complaint.'" Goode v. Central Virginia Legal Aid Society, Inc.,
807 F.3d 619, 623 (4th Cir. 2015) (quoting Domino Sugar Corp. v.
Sugar Workers Local Union 392, 10 F.3d 1064, 1066-67 (4th Cir.
1993); see also Green v. Booker, No. 05-6298, 149 F. App'x 140,
141 (4th Cir. Sept. 1, 2005) ("The district court's dismissal
without prejudice is not appealable.").

In the instant case, the dismissal for failure to exhaust
administrative remedies was without prejudice.  Furthermore, the

United States conceded that plaintiff would have sixty days from dismissal of the claims to exhaust his administrative remedies. Therefore, it appears that plaintiff can "save" his claims merely by amending his complaint.  Accordingly, the court concludes that its earlier order dismissing plaintiff's FTCA claims without prejudice was not a "judgment" within the meaning of the judgment bar provision.[1]

For these reasons, Lanham's motion to dismiss based on the FTCA's judgment bar is DENIED.

2.      <u>Bivens</u> Claim and Immunity

Brodnik's <u>Bivens</u> claim against Lanham is grounded in three actions on the part of Lanham: 1) his testimony at Brodnik's trial; 2) his recommendation to prosecute Brodnik; and 3) his acquisition of Brodnik's email via Beck.  The court considers each in turn.

---

[1] As in <u>Himmelreich</u>, the court's determination that the judgment bar rule does not apply herein makes sense.

> Ordinarily, the judgment bar provision prevents unnecessarily duplicative litigation.  If the District Court in this case had issued a judgment dismissing Himmelreich's first suit because the prison employees were not negligent, because Himmelreich was not harmed, or because Himmelreich simply failed to prove his claim, it would make little sense to give Himmelreich a second bite at the money-damages apple by allowing suit against the employees:  Himmelreich's first suit would have given him a fair chance to recover damages for his beating.

<u>Himmelreich</u>, 136 S. Ct. at 1849.  In this case, Brodnik has not yet had his one "fair chance" at the "money-damages" apple.

a.   *Witness Immunity*

To the extent that Brodnik's <u>Bivens</u> claim against Lanham stems from Lanham's testimony at trial, Lanham is entitled to absolute immunity for his testimony as a witness.  As the Supreme Court has held, "the immunity of a trial witness sued under § 1983 [and <u>Bivens</u>] is broader: In such a case, a trial witness has absolute immunity with respect to <u>any</u> claim based on the witness' testimony."  <u>Rehberg v. Paulk</u>, 132 S. Ct. 1497, 1505 (2012) (citing <u>Briscoe v. LaHue</u>, 460 U.S. 325 (1983)) (emphasis in original); <u>see also</u> <u>Lyle v. Sparks</u>, 79 F.3d 372, 378 (4th Cir. 1996)(citing with approval <u>Briscoe</u>'s holding that "government officials who testify at criminal trials are absolutely immune from damages liability based on their testimony" and concluding that government official's grand jury testimony enjoyed absolute immunity); <u>Collis v. United States</u>, 498 F. Supp.2d 764, 771 (D. Md. 2007) (FBI agent entitled to absolute immunity as a government witness testifying before grand jury even assuming target would not have been indicted but for agent's allegedly false testimony); <u>Caldwell v. Green</u>, 451 F. Supp.2d 811, 820 (W.D. Va. 2006) (holding deputy sheriff had absolute witness immunity from damages liability under § 1983 based on grand jury testimony); <u>Bragdon v. Malone</u>, 425 F. Supp.2d 1, 3 (D.D.C. 2006) (FBI agent "is correct in his assertion that he is absolutely immune from civil prosecution for his trial testimony.").

The Supreme Court has also made clear that this absolute immunity extends to law enforcement witnesses.  See Rehberg, 132 S. Ct. at 1505 ("Neither is there any reason to distinguish law enforcement witnesses from lay witnesses.  In Briscoe, it was argued that absolute immunity was not needed for police-officer witnesses, but the Court refused to draw that distinction.").

> When a police officer appears as a witness he may reasonably be viewed as acting like any other witness sworn to tell the truth – in which event he can make a strong claim to witness immunity; alternatively, he may be regarded as an official performing a critical role in the judicial process, which event he may seek the benefit afforded to other governmental participants in the same proceeding.  Nothing in the language of the statute suggests that such a witness belongs in a narrow, special category lacking protection against damages suits.

Briscoe, 460 U.S. at 335-36.  For this reason, Lanham's trial testimony is absolutely immune from Bivens liability.

b.    *Prosecutorial Immunity*

It is well established that prosecuting attorneys are entitled to absolute immunity for actions taken in their role as a prosecuting attorney.  As our appeals court has explained:

> In Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that a prosecutor enjoys absolute immunity from suit for conduct "in initiating and in presenting the State's case." Id. at 431, 96 S. Ct. at 994. The Court explained:
>
> > A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court.  The public trust of the prosecutor's office would

> suffer if he were constrained in making every
> decision by the consequences in terms of his
> own potential liability in a suit for
> damages.  Such suits could be expected with
> some frequency, for a defendant often will
> transform his resentment at being prosecuted
> into the ascription of improper and malicious
> actions to the State's advocate.
>
> Id. at 424-25, 96 S. Ct. at 991-92.  This court
> has repeatedly reaffirmed that a prosecutor is
> entitled to absolute immunity for claims that rest
> on her decisions regarding "whether and when to
> prosecute." Lyles v. Sparks, 79 F.3d 372, 377
> (4th Cir. 1996) (quoting Imbler, 424 U.S. at 431
> n. 33, 96 S. Ct. at 996 n. 33); see also Ehrlich
> v. Giuliani, 910 F.2d 1220 (4th Cir.1990).

Springmen v. Williams, 122 F.3d 211, 213 (4th Cir. 1997).

As noted above, a prosecutor is entitled to absolute
immunity for the initiation and prosecution of a criminal case.
Springmen, 122 F.3d at 212-13 ("The doctrine of absolute immunity
squarely covers a prosecutor's decision to go forward with a
prosecution.").  Furthermore, "prosecutorial immunity extends to
certain agents of the prosecutor when they are engaged in
performing tasks that are inherently prosecutorial in nature."
Joseph v. Shepherd, Nos. 04-4212, 05-4181, 211 F. App'x 692, 697
(10th Cir. Dec. 15, 2006) (absolute immunity attached to actions
of investigator for district attorney who presented criminal
charges to the D.A.); see also Nogueros-Cartagena v. United
States Department of Justice, No. 03-1113, 75 F. App'x 795, 798
(1st Cir. Sept. 26, 2003) (affirming dismissal of Bivens
malicious prosecution claim against FBI agent because "[t]he

11

existence of absolute prosecutorial immunity is a matter of
function; it depends not on the title or position of the official
involved, but, rather, on the specific conduct in question."); 
Tyler v. Wick, No.14-cv-68-jdp, 2015 WL 1486506, *11 (W.D. Wis.
Mar. 31, 2015) (holding that probation officer was "entitled to
absolute prosecutorial immunity" for recommendation that
plaintiff's probation be revoked).  As the Joseph court
explained, in determining whether prosecutorial immunity applies,
courts should use "a functional approach that examines the nature
of the function the defendant performed, not the identity of the
actor who performed it."  Joseph, 211 F. App'x at 697 (internal
citations and quotations omitted).

       Based on the foregoing, that Brodnik recommended
prosecution, without more, is subject to absolute immunity from
liability.  See Goldstein v. Moatz, 364 F.3d 205, 216-17 (4th
Cir. 2004) ("The function of recommending prosecution is
protected by absolute immunity because it requires the exercise
of discretion.").

c.      *Malicious Prosecution under Bivens*[2]

Even if the mere recommendation to prosecute is not absolutely immune under the doctrine of prosecutorial immunity, to the extent that plaintiff argues that Lanham's recommendation to prosecute gives rise to a malicious prosecution claim under Bivens, he has failed to state a claim on which relief can be granted.  Of constitutional malicious prosecution claims, our appeals court has stated:

> A "malicious prosecution claim under § 1983[3] is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000). To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.  See Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012).
>
> For purposes of this appeal, the officers do not contend that the Evans plaintiffs have failed to allege illegal seizures (i.e., the indictments) or

---

[2] Whether there is a federal constitutional right to be free from malicious prosecution is not settled.  See Snider v. Seung Lee, 584 F.3d 193, 199 (4th Cir. 2009) ("[I]t is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution. . . .").

[3] Because a Bivens "action is similar to a § 1983 action against state officials, courts frequently rely on case law from § 1983 actions in resolving claims under Bivens." Nezirovic v. Heaphy, No. 7:15CV00170, 2015 WL 4112162, * (W.D. Va. Jul. 8, 2015); see also Wilson v. Layne, 526 U.S. 603, 609 (1999) ("Although this case involves suits under both § 1983 and Bivens, the qualified immunity analysis is identical under either cause of action.").

that criminal proceedings failed to terminate in the plaintiffs' favor (i.e., the dismissal of the indictments).  The officers do maintain, however, that they escape liability for the assertedly illegal seizures because they did not cause them. Rather, they contend, an independent intervening act of another—i.e., Prosecutor Nifong's decisions to seek the indictments—caused the seizures.

Of course, constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation.  See Murray v. Earle, 405 F.3d 278, 289–90 (5th Cir. 2005); Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999).  Accordingly, subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure. See Zahrey v. Coffey, 221 F.3d 342, 351 (2d Cir. 2000).  Such "intervening acts of other participants in the criminal justice system" insulate a police officer from liability.  Id.; see also Cuadra v. Hous. Indep. Sch. Dist., 626 F.3d 808, 813 (5th Cir. 2010), cert. denied, ---U.S. ----, 131 S. Ct. 2972, 180 L. Ed.2d 247 (2011); Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007); Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989); Smiddy v. Varney, 665 F.2d 261, 266-68 (9th Cir. 1981), overruled on other grounds by Beck v. City of Upland, 527 F.3d 853, 865 (9th Cir. 2008); Rhodes v. Smithers, 939 F.Supp. 1256, 1274 (S.D.W. Va. 1995), aff'd, No. 95-2837, 1996 WL 420471 (4th Cir. July 29, 1996) (unpublished).

However, even when, as here, a prosecutor retains all discretion to seek an indictment, police officers may be held to have caused the seizure and remain liable to a wrongfully indicted defendant under certain circumstances.  In particular, officers may be liable when they have lied to or misled the prosecutor, see, e.g., Sykes v. Anderson, 625 F.3d 294, 317 (6th Cir. 2010); Jones v. City of Chicago, 856 F.2d 985, 993 (7th Cir. 1988); Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir. 1988); failed to disclose

14

exculpatory evidence to the prosecutor, <u>see, e.g.</u>, <u>Dominguez v. Hendley</u>, 545 F.3d 585, 590 (7th Cir. 2008); <u>Sanders v. English</u>, 950 F.2d 1152, 1159–60 (5th Cir. 1992); or unduly pressured the prosecutor to seek the indictment, <u>cf.</u> <u>Beck</u>, 527 F.3d at 870.

Stated differently, a police officer is not liable for a plaintiff's unlawful seizure following indictment "in the absence of evidence that [the officer] misled or pressured the prosecution." <u>Wray</u>, 490 F.3d at 195; <u>see also</u> <u>Snider v. Lee</u>, 584 F.3d 193, 206 (4th Cir. 2009) (Stamp, J., concurring) ("A law enforcement officer who presents all relevant probable cause evidence to a prosecutor . . . is insulated from a malicious prosecution claim where such intermediary makes an independent decision . . . unless the officer [1] concealed or misrepresented facts or [2] brought such undue pressure to bear on the intermediary that the intermediary's independent judgment was overborne."); <u>Hand v. Gary</u>, 838 F.2d 1420, 1428 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.").

<u>Evans v. Chalmers</u>, 703 F.3d 636, 647–48 (4th Cir. 2012).

Brodnik does not allege that Lanham misled or misinformed the prosecutor.  Nor does he allege that Lanham failed to disclose exculpatory evidence to the prosecutor or that he unduly pressured the prosecutor to seek the indictment.  Accordingly, Brodnik's <u>Bivens</u> malicious prosecution claim is subject to dismissal.[4]  <u>See</u> <u>id.</u> at 649 ("Because the Evans plaintiffs do not

---

[4] Our appeals court has made clear that a constitutional malicious prosecution claim is grounded in the Fourth Amendment. <u>See</u> <u>Lambert v. Williams</u>, 223 F.3d 257, (4th Cir. 2000) ("[T]here is no such thing as a `§ 1983 malicious prosecution' claim.  What we termed a `malicious prosecution' claim in <u>Brooks</u> is simply a

allege that Officers Gottlieb and Himan either misled or
pressured Nifong to seek their indictments, we reverse the
district court's denial of the officers' motions to dismiss the
Evans plaintiffs' § 1983 malicious prosecution claims against
them.").

       d.     *Qualified Immunity*

     With respect to plaintiff's claims regarding Lanham's
methods in obtaining his emails, Lanham argues that his actions
are entitled to qualified immunity.

     The defense of qualified immunity shields a government
official from liability for civil monetary damages if the
officer's conduct does not violate clearly established statutory
or constitutional rights of which a reasonable person would have

---

claim founded on a Fourth Amendment seizure that incorporates
elements of the analogous common law tort of malicious
prosecution. . . .”); see also Evans v. Chalmers, 703 F.3d 636,
647 (4th Cir. 2012) (“A malicious prosecution claim under § 1983
is properly understood as a Fourth Amendment claim for
unreasonable seizure which incorporates certain elements of the
common law tort.”) (internal citations and quotations omitted).
Therefore, to the extent that plaintiff's complaint alleges a
constitutional malicious prosecution claim under the Fifth and
Fourteenth Amendments, those claims are dismissed. See Safar v.
Tingle, Case No. 1:15-cv-467 and 469, 2016 WL 1367165, *6 (E.D.
Va. Apr. 4, 2016) (“Inasmuch as plaintiffs’ § 1983 claims against
Officer Rodriguez are premised on the Fourteenth Amendment's due
process clause – whether procedural or substantive due process –
the claims must be dismissed because as the Supreme Court has
made clear, allegations of false arrest, false imprisonment,
malicious prosecution and unlawful seizure are all governed not
by the procedural and due process components of the Fourteenth
Amendment, but by the Fourth Amendment (incorporated in the
Fourteenth Amendment).”).

known.  <u>Wiley v. Doory</u>, 14 F.3d 993, 995 (4th Cir. 1994); <u>Smook</u>
<u>v. Hall</u>, 460 F.3d 768, 777 (6th Cir. 2006).  The doctrine of
qualified immunity protects government officials "from liability
for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which a
reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457
U.S. 800, 818 (1982).

In <u>Saucier v. Katz</u>, 533 U.S. 194, 195 (2002), the Supreme
Court mandated a two-step sequence for resolving the qualified
immunity claims of government officials.

> First, a court must decide whether the facts that
> a plaintiff has alleged (see Fed. Rules Civ. Proc.
> 12(b)(6), (c)) or shown (see Rules 50, 56) make
> out a violation of a constitutional right.  533
> U.S., at 201, 121 S. Ct. 2151.  Second, if the
> plaintiff has satisfied this first step, the court
> must decide whether the right at issue was
> "clearly established" at the time of defendant's
> alleged misconduct.  <u>Ibid.</u>  Qualified immunity is
> applicable unless the official's conduct violated
> a clearly established constitutional right.

<u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815-16 (2009).  The Court
has held that courts may exercise discretion in deciding which of
the two <u>Saucier</u> prongs "should be addressed first in light of the
circumstances in the particular case at hand."  <u>See</u> <u>id.</u> at 818.
"[T]he rigid <u>Saucier</u> procedure comes with a price.  The procedure
sometimes results in a substantial expenditure of scarce judicial
resources on difficult questions that have no outcome on the
case.  There are cases in which it is plain that a constitutional

right is not clearly established but far from obvious whether in fact there is such a right." Id.

Under the first prong, a court must determine whether the facts as alleged, taken in the light most favorable to plaintiff, demonstrate the violation of a constitutional right. Saucier, 533 U.S. at 201 ("Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [state actor's] conduct violated a constitutional right?"). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. Id.

A right is clearly established when it has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state in which the action arose. Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999). The relevant, dispositive inquiry is whether it would be clear to a reasonable person that the conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194, 195 (2002). "Clearly established" does not mean that "the very action in question has previously been held unlawful," but requires the unlawfulness of the conduct to be apparent "in light of preexisting law." Wilson v. Layne, 526 U.S. 603, 615 (1999).

> The responsibility imposed on public officials to
> comply with constitutional requirements is
> commensurate with the legal knowledge of an
> objectively reasonable official in similar

circumstances at the time of the challenged
conduct.  It is not measured by the collective
hindsight of skilled lawyers and learned judges. *
* * "Officials are not liable for bad guesses in
gray areas; they are liable for transgressing
bright lines." <u>Maciarello v. Sumner</u>, 973 F.2d
295, 295 (4th Cir. 1992), <u>cert. denied</u>, 506 U.S.
1080 (1993).

<u>Jackson v. Long</u>, 102 F.3d 722, 730-31 (4th Cir. 1996); <u>see also</u>

<u>Williams v. Hansen</u>, 326 F.3d 569, 578-79 (4th Cir. 2003) (holding

that for purposes of qualified immunity, executive actors are not

required to predict how the courts will resolve legal issues).

"In determining whether the specific right allegedly violated was

`clearly established,' the proper focus is not upon the right at

its most general or abstract level, but at the level of its

application to the specific conduct being challenged.'" <u>Wiley v.</u>

<u>Doory</u>, 14 F.3d 993, 995 (4th Cir. 1994)(quoting <u>Pritchett v.</u>

<u>Alford</u>, 973 F.2d 307, 312 (4th Cir. 1992)).

A fair reading of plaintiff's <u>Bivens</u> claim is that

defendants Lanham and Beck violated his Fourth Amendment right to

be protected from unreasonable searches and seizures by

"illegally" accessing his email.  The Fourth Amendment guarantees

that, "The right of the people to be secure in their persons,

houses, paper, and effects, against unreasonable searches and

seizures, shall not be violated, and no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons

or things to be seized." U.S. Const. amend. IV; <u>Minnesota v.</u>

Carter, 525 U.S. 83, 88 (1998).  To establish a violation of his rights under the Fourth Amendment, Simons must first prove that he had a legitimate expectation of privacy in the place searched or the item seized.  See Rakas v. Illinois, 439 U.S. 128, 143 (1978); United States v. Rusher, 966 F.2d 868, 873-74 (4th Cir. 1992).

In order to prove a legitimate expectation of privacy, Brodnik must show that his subjective expectation of privacy is one that society is prepared to accept as objectively reasonable. See California v. Greenwood, 486 U.S. 35, 39 (1988).  A government action constitutes a "search" only if it infringes on an expectation of privacy that society considers reasonable. United States v. Jacobsen, 466 U.S. 109, 113 (1984).  "Thus, the government must obtain a warrant before inspecting places where the public traditionally expects privacy, like the inside of a home or the contents of a letter."  In re § 2703(d) Order, 787 F. Supp.2d 430, 439 (E.D. Va. 2011)); see also United States v. Karo, 468 U.S. 705, 714 (1984) (warrant required to use electronic location-monitoring device in a private home); Kyllo v. United States, 533 U.S. 27, 34 (2001) (warrant required to use publically unavailable, sense-enhancing technology to gather information about the interior of a home); Jacobsen, 466 U.S. at 114 (warrant required to inspect the contents of sealed letters and packages); United States v. Warshak, 631 F.3d 266, 287–89

(6th Cir. 2010) (extending Fourth Amendment protection to the contents of email communications).

Absent any compelling reason to suggest otherwise, the court holds that Brodnik had a legitimate expectation in the privacy of his emails. Furthermore, it was clearly established that as of the time Lanham began his investigation, on or about 2003 or later, that he needed a warrant to obtain Brodnik's emails. Lanham contends, however, that there is no Fourth Amendment violation because Beck provided the emails to him and the Fourth Amendment does not apply "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." Jacobsen, 466 U.S. at 114 (quoting Walter v. United States, 447 U.S. 649, 662 (1980)).

Lanham's statement of the law is correct – the Fourth Amendment proscribes only government action. However, plaintiff's allegations with respect to the seizure of his emails suggest that the seizure amounted to government action. Specifically, he alleges:

> 17. Defendant Beck testified that she illegally accessed plaintiff Brodnik's electronic email.

> 18. Defendant Beck testified that she produced print outs of messages she obtained when she illegally accessed plaintiff Brodnik's electronic mail to defendant Lanham.

> 19. Defendants Lanham and Beck conversed frequently via electronic mail and other means. Some of

21

> defendants' conversations included defendant
> Beck's compensation if plaintiff Brodnik was
> convicted.

32.   Defendant Lanham participated in defendant Beck's
      actions by using the illegally accessed electronic
      mail in the prosecution of plaintiff Brodnik in
      violation of the Fourth and Fourteenth Amendments.

35.   Furthermore, defendant Lanham also discussed
      possible compensation for defendant Beck if
      plaintiff was convicted, thus encouraging
      defendant Beck to gain information in any manner
      possible in violation of the Fourteenth Amendment.

36.   By encouraging defendant Beck to illegally search
      and seize plaintiff's electronic mail, and then
      subsequently using the fruit of that illegal
      search and seizure, plaintiff's Fourth Amendment
      rights were violated.

Second Amended Complaint ¶¶ 17-19, 32, and 35-36.  Taking

plaintiff's allegations as true and drawing all reasonable

inferences in plaintiff's favor, as the court must for purposes

of this motion, the court finds that a fair reading of

plaintiff's complaint is that Beck's acquisition of Brodnik's

emails was done at the behest and with the encouragement of

defendant Lanham, thereby transforming her action into government

action.  As our appeals court has explained:

> Of course, it is private individuals, not City
> officials, who have actually interfered with
> Presley's possessory interests here.  Although
> private actions generally do not implicate the
> Fourth Amendment, when a private person acts as an
> agent of the Government or with the participation
> or knowledge of any governmental official, then
> the private person's acts are attributed to the
> government.  The government need not compel nor
> even involve itself directly in the private
> person's actions.

22

Presley v. City of Charlottesville, 464 F.3d 480, 487 (4th Cir. 2006) (internal citations and quotations omitted).

According to the complaint, in seizing the emails, Beck was encouraged to do so by Lanham and, therefore, could be considered an agent of the government.  The viability of Brodnik's Bivens claim hinges on whether Beck was acting as an agent of the government when she seized plaintiff's emails. If she was, the Fourth Amendment is implicated.  If she was not, there is no Fourth Amendment violation and plaintiff's Bivens claim is subject to dismissal.

For this reason, the court deems it necessary to allow limited discovery on this issue so that the court can determine whether to allow plaintiff's Bivens claim to proceed.  See Crawford-El v. Britton, 523 U.S. 574, 600 (1998) ("[T]he judge should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took, since that defense should be resolved as early as possible.").  Where, as here, a court finds that a "plaintiff has made sufficiently specific factual allegations" and "taking plaintiff's allegations as true, plaintiff has stated a violation of clearly established law[,] . . . "[a]llowing limited discovery enables the Court to resolve the issue of qualified immunity in the manner envisioned by Crawford-El.").  Delph v. Trent, 86 F. Supp.2d 572, 577 (E.D. Va. 2000).

Given the foregoing, Lanham's motion to dismiss the
Bivens claim against him is denied without prejudice.  Once
limited discovery is complete, he may file a motion for summary
judgment as to the qualified immunity defense.


B.    Beck's Motion to Dismiss

      1.  <u>Bivens</u> Claim

For the reasons discussed above, Beck's motion to dismiss
the <u>Bivens</u> claim is denied pending discovery into whether Beck
was an agent of the government.  With respect to her argument
that Brodnik had no legitimate expectation of privacy in his
emails because he had given her his password, that argument may
be renewed once the limited discovery discussed above is
complete.

      2.  Invasion of Privacy

West Virginia recognizes the common law claim of invasion
of privacy and it includes the "unreasonable intrusion upon the
seclusion of another."  <u>Crump v. Beckley Newspapers, Inc.</u>, 320
S.E.2d 70, 85 (W. Va. 1984).  "Unreasonable intrusion upon
another's seclusion occurs when `[o]ne . . . intentionally
intrudes, physically or otherwise, upon the solitude or seclusion
of another or his private affairs or concerns. . . . if the
intrusion would be highly offensive to a reasonable person'"
<u>Harbolt v. Steel of West Virginia, Inc.</u>, 640 F. Supp.2d 803, 817

24

(S.D.W. Va. 2009) (Chambers, J.) (quoting Restatement (Second) of Torts § 652B).

Beck argues that she cannot be liable for invasion of privacy based on her disclosure of plaintiff's email because she had Brodnik's password.  However, even if this is true, this fact appears nowhere on the face of the complaint.  At this stage of the proceedings, the court is permitted to consider only the allegations in the complaint, as well as the reasonable inferences to be drawn therefrom.  Plaintiff alleges that:

> 17.   Defendant Beck testified that she illegally accessed Brodnik's electronic email.

> 18.   Defendant Beck testified that she produced print outs of messages she obtained when she illegally accessed plaintiff Brodnik's electronic mail to defendant Lanham.

Complaint ¶¶ 17 and 18.  Several jurisdictions "have found the intentional interception of another's email to be sufficiently offensive to sustain a claim" for invasion of privacy.  <u>Stirling Intern. Realty, Inc. v. Soderstrom</u>, No: 6:14-cv-1109-Orl-40TBS, 2015 WL 403318 *6 (M.D. Fla. Jan. 28, 2015).

> For example, in <u>Lazette v. Kulmatycki</u>, 949 F. Supp.2d 748, 760 (N.D. Ohio 2013), the court found that an employer's unauthorized access of its employee's personal emails was sufficient to allege a highly offensive intrusion.  <u>See also</u>, <u>e.g.</u>, <u>Powell v. Yellow Book USA, Inc.</u>, 445 F.3d 1074, 1080 (8th Cir. 2006) (speculating that reading someone's email without permission would be enough to state a claim for intrusion); <u>Coalition for an Airline Passengers' Bill of Rights v. Delta Air Lines, Inc.</u>, 693 F. Supp.2d 667, 675 (S.D. Tex. 2010) (finding that stealing

25

another's personal correspondence from his computer is offensive enough to constitute intrusion); cf. Brown-Criscuolo v. Wolfe, 601 F. Supp.2d 441, 455 (D. Conn. 2009) (holding that unauthorized access of email is sufficient to allege outrageous conduct for an intentional infliction of emotional distress claim).  Using similar principles, courts likewise find that the unauthorized reading of another's physical mail is sufficiently offensive to maintain an action for intrusion.  E.g., Vernars v. Young, 539 F.2d 966, 969 (3d Cir. 1976); Shows v. Morgan, 40 F. Supp.2d 1345, 1362-63 (M.D. Ala. 1999).

Id.

Based on the foregoing, plaintiff has stated a claim for invasion of privacy against Beck and her motion to dismiss must be denied.

3.  Civil Conspiracy

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means.  The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff."  O'Dell v. Stegall, 703 S.E.2d 561, 595 (W. Va. 2010)

> A civil conspiracy is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s).

Id. at 595-96 (holding there was insufficient evidence to support jury's verdict on civil conspiracy claim where there was

insufficient evidence to support underlying torts or wrongs alleged by the plaintiff).

Plaintiff's state law civil conspiracy claim is somewhat unclear.  For example, he contends that defendants conspired to violate his constitutional rights.  However, such allegations do not state a claim for civil conspiracy under state law.  Rather, they are just another way of stating a federal civil rights conspiracy claim.  However, in his brief, plaintiff contends that defendants conspired to invade his privacy.  Given that the court has already determined that plaintiff has stated a claim for invasion of privacy, he has also stated a claim for conspiracy to invade his privacy.  Therefore, Beck's motion to dismiss this claim is likewise denied.

4. Intentional Infliction of Emotional Distress/Outrage

In order for a plaintiff to prevail on a claim for intentional infliction of emotional distress, four elements must be established:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

27

Tomblin v. WCHS-TV8, 2010 WL 324429, *10 (S.D.W. Va. 2010)

(quoting Philyaw v. Eastern Associated Coal Corp., 633 S.E.2d 8,

Syl. pt. 2 (W. Va. 2006)).   Intentional or reckless infliction of

emotional distress is the same thing as the tort of outrage.

Lovell v. State Farm Mutual Ins. Co., 584 S.E.2d 553, 557 n.10

(W. Va. 2003); see also Travis v. Alcon Laboratories, 504 S.E.2d

419, 424 (W. Va. 1998) ("Intentional or reckless infliction of

emotional distress, also called the `tort of outrage,' is

recognized in West Virginia as a separate cause of action.").

"[T]rial courts should first examine the proof presented

by the plaintiff to determine if the defendant's conduct may

legally be considered "extreme and outrageous."   O'Dell v.

Stegall, 703 S.E.2d 561, 594 (W. Va. 2010).

> In evaluating a defendant's conduct in an
> intentional or reckless infliction of emotional
> distress claim, the role of the trial court is to
> first determine whether the defendant's conduct
> may reasonably be regarded as so extreme and
> outrageous as to constitute the intentional or
> reckless infliction of emotional distress.
> Whether conduct may reasonably be considered
> outrageous is a legal question, and whether
> conduct is in fact outrageous is a question for
> jury determination.

Id.

According to the Second Amended Complaint:

17.   Defendant Beck testified that she illegally
accessed plaintiff Brodnik's electronic mail.

18.   Defendant Beck testified that she produced print
outs of messages she obtained when she illegally

28

accessed plaintiff Brodnik's electronic mail to
defendant Lanham.

19.     Defendants Lanham and Beck conversed frequently
        via electronic mail and other means.  Some of
        defendants' conversations included defendant
        Beck's compensation if plaintiff Brodnik was
        convicted.

35.     Furthermore, defendant Lanham also discussed
        possible compensation for defendant Beck if
        plaintiff was convicted, thus encouraging
        defendant Beck to gain information in any manner
        possible. . . .

65.     Plaintiff Brodnik suffered sever emotional
        distress, pain and suffering, mental anguish, and
        loss of ability to enjoy life as a direct and
        proximate cause of defendants' conduct in
        prosecuting plaintiff Brodnik.

Complaint ¶¶ 17-19, 35, and 65.  Taking the foregoing as true,

plaintiff has stated a claim for intentional infliction of

emotional distress against Beck.

        5.  Malicious Prosecution

        In an action for malicious prosecution, plaintiff
        must show: (1) that the prosecution was set on
        foot and conducted to its termination, resulting
        in plaintiff's discharge; (2) that it was caused
        or procured by defendant; (3) that it was without
        probable cause; and (4) that it was malicious.  If
        a plaintiff fails to prove any of these, he cannot
        recover.

Norfolk Southern Railway Co. v. Higginbotham, 721 S.E. 2d 541.

545-546 (W. Va. 2011) (internal citations and quotations

omitted).  Specifically, Beck contends that plaintiff cannot

prove the third element – i.e., that the prosecution was without

probable cause – because the grand jury returned three indictments.

The West Virginia Supreme Court of Appeals, relying on federal authorities, has held that in a retaliatory prosecution case that "a grand jury indictment is prima facie evidence of probable cause for the underlying criminal prosecution, and a plaintiff may rebut this evidence by showing that the indictment was procured by fraud, perjury, or falsified evidence." <u>Jarvis v. West Virginia State Police</u>, 711 S.E. 2d 542, 550 (W. Va. 2010).  West Virginia's highest court has further instructed:

> Probable cause for instituting a prosecution is such a state of facts and circumstances known to the prosecutor personally or by information from others as would in the judgment of the court lead a man of ordinary caution, acting conscientiously, in the light of such facts and circumstances, to believe that the person charged is guilty. . . . The question of probable cause or the absence of it is in no sense dependent on the guilt or innocence of accused, but depends on the prosecutor's honest belief in such guilt based on reasonable grounds. . . .  On the question of probable cause, the facts, circumstances, knowledge and information must be viewed from the standpoint of the defendant, rather than from the standpoint of the plaintiff.

<u>Truman v. Fidelity & Casualty Co. of New York</u>, 123 S.E. 2d 59, 69 (W. Va. 1961) (internal citations and quotations omitted).  "In civil malicious prosecution actions, the issues of malice and probable cause become questions of law for the court where there is no conflict of evidence or where there is only one inference

30

to be drawn by reasonable minds." <u>Morton v. Chesapeake and Ohio</u> <u>Railway Co.</u>, 399 S.E. 2d 464, 467 (W. Va. 1990).

At this juncture, Beck's motion to dismiss the malicious prosecution claim must be denied.  Although the fact of an indictment is certainly compelling evidence that plaintiff will not be able to meet his burden of showing a lack of probable cause, he should be given the chance to rebut the presumption. Accordingly, Beck's motion to dismiss Count VII is denied.

### III.  Conclusion

For the reasons expressed above, the court ORDERS as follows:

    1)    Lanham's Motion to Dismiss Count I pursuant to FTCA judgment bar (ECF No. 78) is **DENIED**;

    2)    Lanham's Motion to Dismiss Count I (ECF No. 70) is **GRANTED** in part and **DENIED** in part;

    3)    Beck's Amended Motion to Dismiss (ECF No. 68) is **DENIED** and her motion to dismiss (ECF No. 66) is **DENIED** as moot; and

    4)    The court will enter a separate Order regarding discovery as discussed herein.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 1st day of August, 2016.

ENTER:

David A. Faber
Senior United States District Judge